**UNITED STATES of America,**
**Appellee,**

v.

**Teddy MOLINA, also known as Samuel Molina, also known as Teddy Samuel Molina, Defendant–Appellant,**

**Jose Cireno, also known as James Ortiz, Irvin Aviles Manso, also known as Irvin Aviles and Carlos Belez, Defendants.**

**Docket No. 02–1742.**

United States Court of Appeals, Second Circuit.

Submitted Sept. 9, 2003.

Decided Jan. 20, 2004.

Robert G. Wells, Syracuse, New York, submitted a brief for Defendant–Appellant.

Richard R. Southwick, Assistant United States Attorney, Syracuse, New York (Glenn T. Suddaby, United States Attorney, Northern District of New York, Syracuse, New York, of counsel), submitted a brief for Appellee.

Before: CARDAMONE, JACOBS, and POOLER, Circuit Judges.

CARDAMONE, Circuit Judge.

Teddy Molina (defendant or appellant) appeals from a judgment of conviction and sentence entered November 26, 2002 in the United States District Court for the Northern District of New York (Munson, J.), following his guilty plea to one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (2000). Molina pled guilty before District Judge Thomas J. McAvoy. Sentencing was referred to District Judge Howard G. Munson, who conducted the sentencing hearing.

This appeal presents us with a sentencing record that we believe contains error. The error is not a reasoned error by the district court, but an error of omission. It is not uncommon when reviewing a record on appeal to be confronted with an error not so substantial as to require reversal, and yet not so insignificant that it may in justice be ignored. Such is the circumstance of this case, and the reason why we write.

## FACTS

In the early morning hours of August 1, 2001 in Syracuse, New York, Teddy Molina with three other men—José Cireno, Carlos Belez, and Irvin Aviles Manso—were apprehended by Syracuse police after a citizen reported that they had been observed crouching in some shrubbery at a house on Seymour Street. When the police arrived, Molina and his cohorts fled, pursued by the police on foot. All four were quickly captured. But during the chase, the men dropped firearms that were later recovered by the police. In all, four firearms were found, including a sawed-off shotgun and three pistols, one of which had an obliterated serial number.

Subsequently, it turned out that Molina and the other three men were planning an armed robbery of an individual they believed was a drug dealer who had drugs and money in his Seymour Street home. On August 15, 2001 a federal grand jury handed down a four-count indictment charging all four participants with weapons charges, as follows: receiving stolen firearms (Count 1); selling defaced firearms (Count 2); unlawfully transporting firearms (Count 3); and possession of a firearm as a prohibited person (convicted felon) (Count 4). Teddy Molina pled guilty to Count 4, charging him with possession of firearms as a prohibited person in violation of § 922(g)(1).

His plea, pursuant to a plea agreement, satisfied his criminal liability under the indictment and left open the question of whether an aggravating role adjustment should be applied for his role in the offense. Molina's presentence investigation report (PSR) recommended a two-level enhancement for his role as manager or organizer under the U.S. Sentencing Guidelines Manual (U.S.S.G.) § 3B1.1(c). Before the sentencing hearing and to prepare for that hearing, defendant's counsel asked the district court that he be provided with the presentence reports and criminal histories of Molina's three co-defendants. The district court did not rule on this motion prior to holding Molina's sentencing hearing.

On September 23, 2002 the sentencing hearing was held on the proposed two-level enhancement for Molina being an organizer. The government called one of his co-defendants, José Luis Cireno, as a witness. Cireno testified with respect to Molina's role in organizing the crime, including the facts that Molina suggested the crime, provided each co-defendant with a firearm, brought tape to the purported crime scene to tie-up the intended victim, and brought walkie-talkies for communication. Defense

counsel cross-examined Cireno, but called no witnesses.

Several weeks later the district court denied by memorandum and order dated October 7, 2002 Molina's motion for disclosure of his co-defendants' PSRs. It ruled that neither the Jencks Act, 18 U.S.C. § 3500 (2000), nor our ruling in *United States v. Charmer Industries, Inc.*, 711 F.2d 1164 (2d Cir.1983), supported Molina's request for co-defendants' presentence reports. Judge Munson noted that he had reviewed *in camera* co-defendant Cireno's presentence report and found that it contained no exculpatory or impeachment material. The district court ruled that since the other two co-defendants were not called to testify, defendant's request for their PSRs was moot.

On October 17, 2002 the district court granted the two-level sentence enhancement the government had requested, raising Molina's total offense level to 26, for which he was sentenced to 80 months in prison, three years of supervised release, and a $100 special assessment. This appeal followed.

## DISCUSSION

On appeal, Molina contends the district judge erred by failing to conduct an *in camera* review of two of his co-defendants' presentence reports to determine whether they contained exculpatory and/or impeachment material that appellant could present at his sentencing hearing; and, additionally erred in imposing a two-level enhancement for appellant's role in the offense pursuant to U.S.S.G. § 3B1.1(c) without making sufficient factual findings. We discuss each contention in turn.

### I *In Camera* Review of Co-Defendants' PSRs

To keep our analysis in context, we take a brief look at how presentence reports evolved. The present day presentence report traces its ancestry back to the Federal Probation Act of 1925, Pub.L. No. 596, ch. 521, § 4, 43 Stat. 1259, 1260–61 (repealed in 1984), establishing probation offices to supervise offenders placed on probation. Trial judges began to use probation officers as a source of informal information regarding offenders. This informal approach was standardized in 1946 by Federal Rule of Criminal Procedure 32(c)(1). The presentence report thereafter became "the single most important document at sentencing" and during defendant's imprisonment. Stephen A. Fennell & William N. Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts*, 93 Harv. L.Rev. 1615, 1623 (1980).

Focus turns to Federal Rule of Criminal Procedure 32, particularly Rule 32(c), which for the first time required the probation department to prepare a report on each defendant. Subdivision (d)(2) of Rule 32 sets out the information that a presentence report should contain. Insofar as pertinent here, it includes

(A) the defendant's history and characteristics, including:

(i) any prior criminal record;

(ii) the defendant's financial condition; and

(iii) any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in correctional treatment;

(B) verified information, stated in a nonargumentative style, that assesses the financial, social, psychological, and medical impact on any individual against whom the offense has been committed;

. . . .

(F) any other information that the court requires.

Subdivision (e) discusses the disclosure of the report and the probation officer's recommendation. It states: "Unless the defendant has consented in writing, the probation officer must not submit a presentence report to the court or disclose its contents to anyone until the defendant has pleaded guilty or *nolo contendere,* or has been found guilty." Fed.R.Crim.P. 32(e)(1).

■ Thus, presentence investigation reports, created by the probation office, function primarily to assist the court in determining an appropriate sentence. For that reason they are generally viewed as confidential so as not to impede the free flow of information needed to assist the sentencing judge. *See Charmer,* 711 F.2d at 1171, 1173. But the confidentiality of presentence reports has not been considered absolute because of due process concerns that a court not impose an unjust sentence based on materially false information obtained from others besides the defendant. *Townsend v. Burke,* 334 U.S. 736, 740–41, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948).

■ With this background in mind, we turn to the question before us: defendant's request to have an examination of his co-defendants' PSRs. With respect to third party disclosures, we have approved a procedure by which the sentencing court examines requested presentence reports *in camera* for exculpatory or impeachment material that might aid the defendant requesting it. The court then determines if the policy of confidentiality is outweighed by a compelling need for disclosure to meet the ends of justice. *See Charmer,* 711 F.2d at 1175; *United States v. Moore,* 949 F.2d 68, 72 (2d Cir.1991). Here, it is undisputed that the district court examined the presentence report of the witness, Cireno. The question before us therefore is whether the district court erred in not

following the same procedure with the two additional non-testifying co-defendants. This issue is a question of first impression.

■ To begin, we set out our standard of review. Ordinarily, a district court's decision as to disclosure of a presentence investigation report is reviewed for an abuse of discretion. *United States v. Pena,* 227 F.3d 23, 27 (2d Cir.2000). In the instant case, however, the sentencing court ruled that the motion for disclosure was moot as to the two non-testifying defendants. Because that ruling was one of law, and not an exercise of discretion, we review it *de novo. See Catanzano v. Wing,* 277 F.3d 99, 107 (2d Cir.2001).

■ The government had the burden at appellant's hearing to prove by a preponderance of the evidence that he was an organizer or leader in the criminal offense for which he was convicted. To discharge that burden the government is required to present facts sufficient to warrant the sentence enhancement. Because of our emphasis on the confidentiality of presentence reports, and because the presentence reports of those individuals—other than defendant himself—are not obviously relevant to the accuracy of defendant's sentence, we have ruled that a showing of compelling need must be made to obtain disclosure of the reports of non-witnesses. *See Moore,* 949 F.2d at 72 (procedure is for district court to review PSR *in camera* ); *see also United States v. Trevino,* 89 F.3d 187 (4th Cir.1996) (no third-party disclosure of presentence investigative report absent plausible showing of materiality and favorability).

The Fourth Circuit has taken a broad view of the ends of justice stating that when a witness whose PSR is sought to be disclosed is a co-defendant, a proper concern for the rights of the defendant requires in some cases that confidentiality of

that co-defendant's PSR be breached "because the testimony of such witness may be shaded to curry favorable treatment rather than being premised upon an overriding concern for the truth." *United States v. Figurski,* 545 F.2d 389, 391 (4th Cir.1976). Be that as it may, we nonetheless think that, under our precedents, no *in camera* review of a co-defendant's PSR is required without a threshold showing of a good faith belief that a co-defendant's PSR contains exculpatory evidence not available elsewhere. *Cf. United States v. Zolin,* 491 U.S. 554, 571, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (party asserting crime-fraud exception to attorney-client privilege must make threshold showing to trigger *in camera* review).

In the case at hand, appellant has made no showing of how the presentence reports of non-witnesses are essential to ensure the fairness of his hearing or the reliability of the facts presented to the court. Instead, Molina's abstract arguments that the reports might affect how he cross-examined Cireno, or may have caused him to present testimony through one or both remaining co-defendants fall well short of the particularity required to demonstrate a compelling need. *See Charmer,* 711 F.2d at 1174; *United States v. Corbitt,* 879 F.2d 224, 239 (7th Cir.1989). Further, key to the showing of a third person seeking disclosure is whether the information in the presentence report is obtainable from other sources. *See Charmer,* 711 F.2d at 1177. Appellant had the opportunity to call his co-defendants as witnesses at the hearing and chose not to do so. Accessing their presentence reports should not serve as a substitute for other available means of obtaining the information they contain.

■ Having so concluded, we add that in the interests of justice, and since we are

conducting *de novo* review of this issue, we obtained and examined the presentence reports, held under seal, of all three co-defendants, José Cireno, Irvin Aviles Manso, and Carlos Belez. None of the co-defendants' presentence reports contain exculpatory or impeachment material indicating that any of the co-defendants served in place of or in the role of organizer of the planned robbery.[1] In short, there is no material for which appellant could reasonably be said to have a compelling need. As a consequence, even assuming that the sentencing court as a matter of preferred practice should examine all the co-defendants' PSRs *in camera,* its failure to do so in this case was harmless error.

## II Sentence Enhancement

■ We turn next to examine the district court's factual findings to see if they are sufficient to support the two-level sentence enhancement imposed on appellant for being an organizer or leader. Our precedents are uniform in requiring a district court to make specific factual findings to support a sentence enhancement under U.S.S.G. § 3B1.1. *United States v. Szur,* 289 F.3d 200, 218 (2d Cir.2002); *United States v. Zagari,* 111 F.3d 307, 330 (2d Cir.1997); *United States v. Stevens,* 985 F.2d 1175, 1184 (2d Cir.1993). We overturn a sentencing court's findings as to the defendant's role in the offense only if those findings are clearly erroneous. *See Szur,* 289 F.3d at 218.

### A. *Adoption of the Presentence Report*

■ A district court satisfies its obligation to make the requisite specific factual findings when it explicitly adopts the factual findings set forth in the presentence report. *United States v. Eyman,*

---

**1.** We say "in the role of" in recognition of the fact that more than one person may be an organizer. *See* U.S.S.G. § 3B1.1, cmt. n. 4 (2002).

313 F.3d 741, 745 (2d Cir.2002) (per curiam), *cert. denied,* —— U.S. ——, 123 S.Ct. 1949, 155 L.Ed.2d 864 (2003); *see United States v. Zichettello,* 208 F.3d 72, 107 (2d Cir.2000), *cert. denied,* 531 U.S. 1143, 121 S.Ct. 1077, 148 L.Ed.2d 954 (2001). It may do so either at the sentencing hearing or in the written judgment it files later. *United States v. Thompson,* 76 F.3d 442, 456 (2d Cir.1996).

 In the present case the sentencing court's entire explanation of the sentence enhancement was as follows:

> THE COURT: All right. Thank you, Mr. Southwick. Anything further?
>
> MR. WELLS: No, Judge, except that I thought you did not rule on the two-point enhancement on the day of the hearing, I thought you reserved it until time of sentencing.
>
> THE COURT: Well, how much difference does that make?
>
> MR. WELLS: Just that I wanted to make sure I also put on the record that I did not concede the issue that had been ruled on.
>
> THE COURT: Well, I'll rule on it now.
>
> MR. WELLS: Yes, sir.
>
> THE COURT: I'll grant the two-point enhancement at this time. Mr. Molina, the Court finds that the Total Offense Level in this case is 26, and the Criminal History Category is III, and the Guideline Imprisonment Range is 78 to 97 months . . .

This is light treatment indeed, and it does not meet the requirement imposed on the district court of making specific factual findings. The quoted discussion does not indicate whether the trial court actually considered the requisite factors under § 3B1.1. Some of those factors are, for example, the defendant's exercise of decision making authority, his recruitment of accomplices, and the degree of his partic-

ipation in organizing the offense. *See* U.S.S.G. § 3B1.1, cmt. n. 4. Such a lack of specificity devoid of any statement of reasons does not permit meaningful appellate review of the enhancement the district court imposed.

Moreover, a sentencing court that relies on a PSR must not only agree with that report, but must also adopt it "expressly." Despite the insufficiency of the explanation offered for the sentence enhancement, the district court arguably satisfied its fact-finding obligations under *Thompson* by expressly adopting the presentence report in the statement of reasons set out in its written judgment.

However, even if the district court was sufficiently "explicit" in satisfying its fact-finding obligations under *Thompson,* we still must consider whether the trial court satisfied its obligations under 18 U.S.C. § 3553(c) to "state in open court the reasons for its imposition of the particular sentence." The trial court did not satisfy this unambiguous mandate.

 Several of our cases contain language that might appear to be at odds with the terms of § 3553(c), which requires that "[t]he court, at the time of sentencing, *shall state in open court* the reasons for its imposition of the particular sentence" (emphasis added). *See, e.g., Eyman,* 313 F.3d at 745 ("A district court satisfies its obligation to make the requisite factual findings when it indicates *in its written judgment* that it is adopting the findings set forth in the PSR." (emphasis added)); *accord United States v. Martin,* 157 F.3d 46, 50 (2d Cir.1998); *United States v. Prince,* 110 F.3d 921, 924 (2d Cir.1997); *Thompson,* 76 F.3d at 456. The issue before the court in those cases, however, was the district court's obligation to make sufficient factual findings—not its obligation to state those findings in open court—so it is not surprising that the cited

cases did not address the open court requirement. Consequently, we do not read them as dispensing with the requirements of § 3553(c). Congress had goals in mind when it enacted § 3553(c), including: (1) to inform the defendant of the reasons for his sentence, (2) to permit meaningful appellate review, (3) to enable the public to learn why defendant received a particular sentence, and (4) to guide probation officers and prison officials in developing a program to meet defendant's needs. *See* S.Rep. No. 98–225, at 79–80 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3262–63; *United States v. Carey,* 895 F.2d 318, 325 (7th Cir.1990). We are concerned that these goals may not be fully met when the fact-finding to support a sentence enhancement is set out only in the written judgment.

We recognize nonetheless that the "open court" requirement may be satisfied by the district court adopting the PSR in open court. Adopting the PSR in open court puts the defendant on notice of the grounds for the sentence imposed since the defendant usually has either seen his own PSR or is entitled to ask for it. However, in the present case the district court did not state either its reasons or adopt the PSR in open court.

### B. *Harmless Error Analysis*

■ Although this omission was error, we must examine the error to ascertain if it was harmless. This will depend on (1) whether the reasons supporting the finding that appellant was an organizer or leader were sufficiently explained in the presentence report, and (2) whether the district court satisfactorily adopted those findings in its statement of reasons. Inasmuch as appellant did not object at the time to the lack of specificity in the district court's factual findings, we review this issue for plain error. To determine if such

exists, a court must find an error in the record before it that (1) has not been waived, (2) is plain, (3) affects a substantial right of the defendant (that is, it must normally have been prejudicial, *United States v. Olano,* 507 U.S. 725, 732–37, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)), and (4) "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Jones v. United States,* 527 U.S. 373, 389, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999).

■ Two other courts have held that when the trial court failed to comply with § 3553's open court provision, the district court's adoption of a presentence report is sufficient for such failure to avoid plain error. *See United States v. Gore,* 298 F.3d 322, 325 (5th Cir.2002); *United States v. Vences,* 169 F.3d 611, 613 (9th Cir.1999). "If the defendant does not object and there is evidence to sustain the enhancement, the error is not reversible under the plain error standard." *Gore,* 298 F.3d at 325; *United States v. Evans,* 272 F.3d 1069, 1089 (8th Cir.2001), *cert. denied,* 535 U.S. 1029, 122 S.Ct. 1638, 152 L.Ed.2d 642 (2002). The same reasoning applies in the case before us, that is, although there were no specific factual findings and no explicit adoption by the district court of appellant's PSR in open court, Molina took no objection. The adequate findings of defendant's PSR were adopted in the written judgment.

Moreover, at the sentencing hearing the testimony revealed that Molina (1) provided the other participants with firearms; (2) furnished information regarding the intended victim of the planned robbery; (3) showed other participants where the proposed victim lived; and (4) brought duct tape to bind the victim's hands during the robbery. These facts taken together sufficiently support the trial court's two-level enhancement of defendant's sentence.

Consequently, although we conclude that with respect to the sentence enhancement the district court committed error, it was harmless error. The reason for that determination is because the error did not affect a substantial right of the defendant, although at the same time, it may not be said to be an unimportant trifle, like the trial judge neglecting to announce that the court would take a lunch break. Here the failure of the district court to give its reasons for enhancing defendant's sentence in open court we think troublesome. But since this omission was not objected to at trial, we review it only for plain error. On that score defendant has not carried his burden of demonstrating any prejudice resulting from the omission. Hence, we affirm.

## CONCLUSION

Accordingly, for the reasons stated, the judgment and sentence appealed from are affirmed.