09-2819-cr
*United States v. Graham*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 15th day of August, two thousand and twelve.

PRESENT:

JOSÉ A. CABRANES,
DEBRA ANN LIVINGSTON,
SUSAN L. CARNEY,
     *Circuit Judges*.

_____

United States of America,

     *Appellee*,

     v.                No. 09-2819-cr

Larone Graham, a/k/a Abgod Graham,

     *Defendant-Appellant*.

_____

| | |
|---|---|
| **FOR DEFENDANT-APPELLANT:** | DONNA R. NEWMAN, New York, NY. |
| **FOR APPELLEE:** | LARA TREINIS GATZ (Jo Ann M. Navickas Assistant U.S. Attorney, *on the brief*), *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee*. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Joanna Seybert, *Judge*).

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED IN PART, REVERSED IN PART** and **REMANDED**.

Defendant-appellant Larone Graham ("Graham") appeals from the June 17, 2009 judgment entered by the District Court, convicting him, following a jury trial, of conspiracy to affect commerce by robbery, in violation of 18 U.S.C. § 1951(a); affecting commerce by robbery, in violation of 18 U.S.C. §§ 1951(a) and 2; conspiracy to affect commerce by extortion, in violation of 18 U.S.C. § 1951(a); affecting commerce by extortion, in violation of 18 U.S.C. § 1951(a) and 2; discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii); and using an explosive to commit a felony, in violation of 18 U.S.C. § 844(h)(1). The judgment of conviction sentenced Graham principally to 600 months of imprisonment and five years of supervised release. We assume the parties' familiarity with the underlying facts and procedural history of this case.

On appeal, Graham raises four principal claims and numerous subsidiary issues. First, Graham contends that his conviction on Count Eleven, use of an explosive to commit a felony in violation of § 844(h)(1), should be reversed because his discharge of a 9-millimeter handgun did not constitute "use of an explosive" within the meaning of the statute. We address this argument in a separate opinion published herewith.[1] Second, Graham challenges the sufficiency of the evidence to support his convictions on Count Two, conspiracy to rob the Cellini Uomo clothing store; Count Three, robbery of the Cellini Uomo clothing store; Count Five, conspiracy to extort Jamel Thompson; and Count Six, extortion of Jamel Thompson; all in violation of § 1951(a). Third, Graham argues that his Sixth Amendment right to "conflict-free" counsel was violated by trial testimony about the involvement of Kevin Hinkson, a private investigator separately retained by Graham, in obtaining a false affidavit from a co-defendant. Fourth, Graham raises a series of sentencing challenges.

---

[1] Graham also argues that 18 U.S.C. § 844(h)(1) is void for vagueness as applied to him; that his convictions under both 18 U.S.C. § 844(h)(1) and 18 U.S.C. § 924(c)(1)(A)(iii) constitute multiple punishments for the same offense, in violation of the Double Jeopardy Clause; and that the evidence presented at trial was insufficient to convict him of a violation of 18 U.S.C. § 844(h)(1) These claims too are dealt with in our separately published opinion.

*Sufficiency of the Evidence*

We review sufficiency challenges *de novo*. *United States v. Andino*, 627 F.3d 41, 49 (2d Cir. 2010). "In challenging the sufficiency of the evidence to support his conviction, a defendant bears a heavy burden." *United States v. Hamilton*, 334 F.3d 170, 179 (2d Cir. 2003). In considering a sufficiency challenge, "we must credit every inference that could have been drawn in the government's favor, and affirm the conviction so long as, from the inferences reasonably drawn, the jury might fairly have [reached the conclusion of] guilt beyond a reasonable doubt." *United States v. Reifler*, 446 F.3d 65, 94-95 (2d Cir. 2006) (internal citations omitted).

*1. Cellini Uomo Robbery (Counts Two and Three)*

With respect to Counts Two and Three, this is not a case, as Graham asserts, of mere association with a guilty party. Instead, the government presented testimony from two co-defendants, Tyrone Redrick and Kareem Davis, that in November 2003, Graham recruited them to rob a fur store later identified as Cellini Uomo. Redrick and Davis further testified that Graham drove them to the store location, described the store layout and merchandise, and indicated that one of the purposes of the robbery was to steal a specific blue mink coat that Graham had previously tried on and wanted for himself. Following the robbery, Graham confronted another co-defendant, Darryl Singleton, who had taken the blue mink coat; Singleton surrendered the coat to Graham because "[t]hat was his robbery." Based on this testimony, a reasonable jury could conclude that Graham both conspired to rob Cellini Uomo (Count Two) and aided and abetted the Cellini Uomo robbery (Count Three).

*2. Hobbs Act Extortion (Counts Five and Six)*

With respect to Counts Five and Six, Graham argues that the government failed to present sufficient evidence to establish the requisite jurisdictional nexus for a Hobbs Act conviction. The Hobbs Act proscribes, *inter alia*, extortion and conspiracy to commit extortion that "in any way or degree obstruct[], delay[], or affect[] commerce or the movement of any article or commodity in commerce." 18 U.S.C. § 1951(a). We have long recognized that "a very slight effect" on interstate commerce (indeed, "even a potential or subtle effect") will suffice to establish Hobbs Act jurisdiction. *United States v. Wilkerson*, 361 F.3d 717, 726 (2d Cir. 2004) (quoting *United States v. Angelilli*, 660 F.2d 23, 35 (2d Cir. 1981)). Where the target of an extortion is an individual rather than a business, the interstate commerce element is established where (1) the victim directly participated in interstate commerce; (2) the victim was targeted because of his status as an employee at a company participating in interstate commerce; (3) the harm or potential harm to the individual

would deplete the assets of a company engaged in interstate commerce; (4) the crime targeted the assets of a business rather than those of an individual; or (5) that the individual was extorted of a sum so large, or targeted in connection with so many individuals, that the amount at stake had a cumulative effect on interstate commerce. *United States v. Perrotta*, 313 F.3d 33, 37-38 (2d Cir. 2002).

In this case, the government presented evidence that in December 2003, Graham and others kidnapped and threatened to kill Jamel Thompson because they believed that Thompson had kept jewelry from a recent robbery for himself. Thompson testified that as "part of the payback" for withholding the jewelry, Graham ordered Thompson to rob one of the jewelry stores on Canal Street. After a failed attempt to rob a Canal Street jewelry store, Thompson later participated in the robbery of a Long Island jewelry store in order to "pay back" Graham. Based on this record, a reasonable jury could conclude that the extortion targeted business assets—in the form of stolen jewelry—rather than Thompson's personal assets. *Perrotta*, 313 F.3d at 38 (finding the interstate commerce element established where "the crime targeted the assets of a business rather than an individual"). We find this nexus sufficient to establish the *de minimis* effect on interstate commerce necessary for Hobbs Act jurisdiction. *See, e.g.*, *United States v. Needham*, 604 F.3d 673, 680 (2d Cir.2010) ("[A]ll that need be shown is the possibility or potential of an effect on interstate commerce, not an actual effect." (internal quotation marks omitted)).

*Right to Conflict-Free Counsel*

"Whether a defendant's representation violated the Sixth Amendment right to effective assistance of counsel is a mixed question of law and fact requiring *de novo* review." *United States v. Kliti*, 156 F.3d 150, 152-153 (2d Cir. 1998). An actual conflict of interest exists when "the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action," *United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002) (internal quotation marks omitted), while a potential conflict of interest exists "if the interests of the defendant may place the attorney under inconsistent duties at some time in the future," *Kliti*, 156 F.3d at 153 n.3. "[W]henever the possibility arises that a counsel's ability to represent a particular defendant has been tainted by a conflict of interest," *Williams v. Meachum*, 948 F.2d 863, 867 (2d Cir. 1991), trial courts should

> advise the defendant of his right to . . . conflict-free representation, instruct the defendant as to problems inherent in being represented by an attorney with divided loyalties, allow the defendant to confer with his chosen counsel, encourage the

4

defendant to seek advice from independent counsel, and allow a reasonable time for the defendant to make his decision.

*United States v. Curcio*, 680 F.2d 881, 890 (2d Cir. 1982).

In this case, the government raised the specter of a potential conflict of interest arising from an affidavit by co-defendant Darryl Singleton, which purported to clear Graham of involvement in certain charges against him. The affidavit was obtained by Kevin Hinkson, the private investigator who had been retained by Graham allegedly without notice to defense counsel, and was attached to Graham's motion to sever his trial. After appointing independent counsel, Judge Seybert conducted a lengthy *Curcio* hearing on December 21, 2006, where she explained to Graham, *inter alia*, that his counsel could become a witness against him in any obstruction of justice investigation relating to the procurement of the Singleton affidavit. Following a narrative colloquy with Judge Seybert, Graham indicated that "I wish to waive all the conflict issues today so myself and [defense counsel] Mr. Barket could proceed with trial." J.A. 503-504. The District Court held that the conflict was waivable and that Graham had executed a knowing and voluntary waiver. *Id.* at 508.

Graham now contends that his pretrial waiver was superseded by additional trial testimony that clarified Hinkson's involvement in crafting the false affidavit and thereby tainted defense counsel by association. The record belies this argument. At the pretrial *Curcio* hearing, Graham indicated his awareness of the obstruction of justice issues posed by Hinkson's association with the Singleton affidavit. *Id.* at 500. Nonetheless, he reiterated that "I'm aware of that, and I just wish to keep my counsel." *Id.* Following careful review of the record, we conclude that the District Court properly accepted Graham's "knowing and intelligent waiver of his right to conflict-free counsel," *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004), and that his waiver bars a conflict-based Sixth Amendment challenge on appeal.

*Sentencing Challenges*

We are remanding for *de novo* resentencing in light of our reversal of Graham's conviction on Count Eleven, discussed in our separately-filed opinion. *See United States v. Rigas*, 583 F.3d 108, 115-119 (2d Cir. 2009) (citing *United States v. Quintieri*, 306 F.3d 1217 (2d Cir. 2002)). We nevertheless address Graham's challenges to the factual basis and procedural reasonableness of his sentence for the guidance of the district court, but do not discuss his challenge to the sentence's substantive reasonableness. We review a criminal sentence for "unreasonableness," which "amounts to review for abuse of discretion." *United States v. Cavera*, 550 F.3d 180, 187 (2d Cir. 2008) (*en banc*) (quotation marks omitted); *see also Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (explaining

5

"abuse of discretion"). "Reasonableness review requires an examination of the length of the sentence (substantive reasonableness) as well as the procedure employed in arriving at the sentence (procedural reasonableness)." *United States v. Johnson*, 567 F.3d 40, 51 (2d Cir. 2009).

### *1. Factual Findings (Count Ten)*

First, Graham claims that his 10-year sentence on Count Ten should be vacated because the District Court failed to make a factual finding that Graham discharged a firearm during the Thompson extortion. We apply the clear error standard when evaluating a district court's findings of fact. *See United States v. Richardson*, 521 F.3d 149, 156 (2d Cir. 2008). "A district court satisfies its obligation to make the requisite specific factual findings when it explicitly adopts the factual findings set forth in the presentence report." *United States v. Molina*, 356 F.3d 269, 275 (2d Cir. 2004).

Here, the District Court adopted the findings of the PSR when it stated that "[c]learly in my mind the recommendations of the probation department are warranted."[2] Contrary to Graham's assertions, the PSR described how Graham discharged a firearm during the Thompson kidnapping and stated that "Graham is held accountable for Thompson's kidnaping, the implied threat of death, discharging a firearm, and for abducting Thompson." We find that, by adopting the PSR during the sentencing hearing, the District Court satisfied its obligations to make factual findings sufficient to support Graham's 10-year sentence on Count Ten.

### *2. Procedural Unreasonableness*

Graham next contends that the District Court committed procedural error in calculating his Guidelines range by incorrectly applying a series of sentencing enhancements. We review a district court's decision to apply a sentencing enhancement *de novo*, but we review the findings of fact supporting its conclusion only for clear error. *See United States v. Florez*, 447 F.3d 145, 150 (2d Cir. 2006).

---

[2] Graham disputes the sufficiency of this statement because the District Court did not make reference to any specific finding in the PSR. We do not, however, require such "robotic incantations" by sentencing judges. *United States v. Fernandez*, 443 F.3d 19, 30 (2d Cir. 2006) (internal quotation marks omitted). Where a district court adopts the factual findings set forth in the PSR, we do not require that explanation to "specifically mention[] the reasons for the . . . enhancement." *United States v. Malki*, 609 F.3d 503, 511 (2d Cir. 2010).

*a. Role Enhancements (Counts One, Two, Three, Five, Six)*

Graham received four-level sentencing enhancements under § 3B1.1(a) of the Guidelines for his leadership role in the conspiracy to rob the Canal Street jewelry store (Count One); the Cellini Uomo robbery (Counts Two and Three); and the Thompson extortion (Counts Five and Six). Section 3B1.1(a) provides for a four-level enhancement if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). Here, ample trial testimony supported the District Court's conclusion that Graham performed a leadership role by, *inter alia*, identifying the Cellini Uomo target, directing his recruits to obtain the blue mink coat, ordering Thompson into the car and shooting at him during the kidnapping, and giving Thompson a gun to carry out the "payback" robbery on Canal Street. Thus, the District Court did not err in applying the four-level role enhancements.

*b. Weapons Enhancements (Counts Five and Six)*

Graham also contests his seven-level sentencing enhancement under § 2B3.2(b)(3)(A)(i) and his two-level sentencing enhancement under § 2B3.2(b)(1), both in connection with Counts Five and Six, the extortion charges. Because Graham did not raise this challenge below, we review only for plain error. *United States v. Villafuerte*, 502 F.3d 204, 207 (2d Cir. 2007).

The government concedes that the District Court incorrectly imposed a seven-level enhancement under § 2B3.2(b)(3)(A)(i) because Graham was also convicted under 18 U.S.C. § 924(c). *See* U.S.S.G. § 2K2.4 cmt. 4 ("If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense."). But the District Court correctly imposed a two-level enhancement under § 2B3.2(b)(1). Although the PSR notes that the defendant "fired a bullet" at Thompson's feet during the kidnapping, the enhancement applied not because of the discharge, but because the Thompson extortion "involved an express or implied threat of . . . death, bodily injury, and kidnapping."

Since the District Court erred only with respect to the seven-level enhancement, the overall Guidelines calculation for Counts Five and Six remains unchanged. Accordingly, we conclude that any calculation error is harmless and does not rise to the level of a "miscarriage of justice" that would warrant a finding of plain error. *See United States v. Zvi*, 168 F.3d 49, 58 (2d Cir. 1999).

7

*c. Use of Firearm by an Accomplice (Counts Two and Three)*

Graham further disputes his six-level sentencing enhancement under § 2B3.1(b)(2)(B), which relates to the use of a firearm, and his two-level sentencing enhancement under § 2B3.1(b)(3)(A), which relates to bodily injury. Both increases related to the fact that a co-defendant, Tyrone Redrick, struck the owner of Cellini Uomo in the head with a gun during the course of the robbery. Section 1B1.3 of the Guidelines provides that a defendant shall be held responsible "in the case of a jointly undertaken criminal activity . . . [for] all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). In order to sentence a defendant on the basis of criminal activity by a coconspirator, a district court must make two particularized findings: (1) that the acts were within the scope of the defendant's agreement; and (2) that they were foreseeable to the defendant. *United States v. Johnson*, 378 F.3d 230, 238 (2d Cir. 2004).

In this case, the PSR characterized the Cellini Uomo robbery as "planned and organized" by Graham. The commentary to the Guidelines makes clear that, on the basis of such a finding, Graham is responsible for the assault:

> [T]wo defendants agree to commit a robbery and, during the course of that robbery, the first defendant assaults and injures a victim. The second defendant is accountable for the assault and injury to the victim (even if the second defendant had not agreed to the assault and had cautioned the first defendant to be careful not to hurt anyone) because the assaultive conduct was in furtherance of the jointly undertaken criminal activity (the robbery) and was reasonably foreseeable in connection with that criminal activity (given the nature of the offense).

U.S.S.G. § 1B1.3(a)(1)(b) cmt. 2. Because Redrick's assault was in furtherance of a robbery "planned and organized" by Graham and reasonably foreseeable to Graham given the nature of the offense, the District Court properly applied the sentencing enhancements under § 2B3.1(b)(2)(B) and § 2B3.1(b)(3)(A).[3]

---

[3] As previously noted, the District Court satisfied its obligation to make factual findings "when it explicitly adopt[ed] the factual findings set forth in the presentence report." *Molina*, 356 F.3d at 275.

We have considered Graham's remaining arguments and find them to be without merit. For the foregoing reasons, and for the reasons stated in the accompanying opinion issued today, Graham's conviction under Count Eleven is **REVERSED**, his convictions under the remaining counts in this case are **AFFIRMED**, and the case is **REMANDED** for further proceedings consistent with this opinion.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court