05-2823-cr
*United States v. Bearam*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————————

August Term, 2006

(Argued: March 6, 2007                    Decided: June 8, 2007)

Docket No. 05-2823-cr

————————————

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

JOHNNY CARTER,

*Defendant,*

MICHEAL BEARAM,

*Defendant-Appellant.*

————————————

Before:

CARDAMONE, STRAUB, and WALLACE,[*] *Circuit Judges.*

————————————

Appeal from an amended judgment entered on June 8, 2005 in the United States District Court for the Eastern District of New York convicting defendant, after jury trial, of conspiring to

---

[*]The Honorable J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

distribute cocaine base in violation of 21 U.S.C. §§ 841, 846, operating a business that distributed controlled substances in violation of 21 U.S.C. § 856, and distributing and possessing with intent to distribute controlled substances in violation of 21 U.S.C. § 841.

AFFIRMED and REMANDED for resentencing.

Judge Wallace concurs in a separate opinion.

_____

STEVEN WEISER, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Susan Corkery, Assistant United States Attorney, *on the brief*), Brooklyn, NY, *for Appellee.*

BRIAN SHEPPARD, Law Office of Brian Sheppard, Esq., New Hyde Park, NY, *for Defendant-Appellant.*

_____

STRAUB, *Circuit Judge*:

Michael Bearam appeals from an amended judgment entered on June 8, 2005 in the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., *Judge*) convicting him, after a jury trial, of conspiring to distribute cocaine base in violation of 21 U.S.C. §§ 841, 846, operating a business that distributed controlled substances in violation of 21 U.S.C. § 856, and distributing and possessing with intent to distribute controlled substances in violation of 21 U.S.C. § 841. Bearam was sentenced principally to 360 months of incarceration. For the following reasons, we affirm the judgment of the District Court but remand the case for resentencing.

**BACKGROUND**

On April 21, 2004, after having obtained a search warrant for Sprinkles Restaurant and

Bakery ("Sprinkles") at 466 Myrtle Avenue in the Fort Greene area of Brooklyn, New York, agents from the Bureau of Alcohol, Tobacco and Firearms ("ATF") entered and searched Sprinkles. They recovered from a closet in Sprinkles a bag containing a large amount of drugs, including what they believed to be crack cocaine, cocaine, heroin, and marijuana. They subsequently arrested defendant-appellant Michael Bearam, who owned and operated the restaurant.

The second superseding indictment charged that, between October of 2003 and April of 2004, Bearam managed and controlled Sprinkles, where cocaine, cocaine base, heroin, and marijuana were stored and distributed in violation of 21 U.S.C. § 856(a)(2), (b); that he conspired to distribute, and to possess with intent to distribute, 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), 846; and that he possessed with intent to distribute 50 or more grams of cocaine base and 500 or more grams of cocaine, heroin, and marijuana in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii), (b)(1)(B)(ii), (b)(1)(C), (b)(1)(D).

On January 20, 2005, the Government filed a prior felony information against Bearam. *See* 21 U.S.C. § 851(a)(1). It charged that in 1986, Bearam was sentenced to a prison term of two to six years for criminal sale of a controlled substance in the third degree in New York.

Prior to commencement of Bearam's trial, the District Court held a hearing to determine whether the court should suppress two inculpatory statements Bearam made to the authorities. The court suppressed the first statement, which was not preceded by *Miranda* warnings, but declined to suppress the subsequent statement, which *was* preceded by warnings. In the unsuppressed statement, Bearam admitted that he sold drugs and that he had known about, and possessed, the bag of drugs recovered from the closet in the restaurant.

The jury returned verdicts of guilty on all counts of the second superseding indictment

against Bearam, except that the jury apparently found that heroin was not involved.

On May 12, 2005, the district court sentenced Bearam to 360 months imprisonment.

**I.       *Suppression Hearing***

After jury selection was completed, but prior to the commencement of trial, the government disclosed to defense counsel that it had just discovered that, in addition to an inculpatory statement Bearam made after *Miranda* warnings had been administered, Bearam had made an inculpatory statement before the warnings were given. The government indicated that it had no intention to use the earlier statement. The court held a hearing on the matter. The relevant facts elicited during the hearing and at trial are as follows.

ATF Agent John Ellwanger, in uniform, and more than five others, some also in uniform, executed the search warrant at Sprinkles. Ellwanger entered a closet in the kitchen and noticed a strong smell of crack cocaine. He discovered a bag containing crack and powdered cocaine, as well as a brown substance which he believed may have been powdered heroin. During this time, Bearam was sitting at a table within arm's length of the closet.

A half hour later, after the search was completed, Ellwanger saw Bearam sitting in front of the restaurant. Two agents were in Bearam's vicinity. Ellwanger asked Bearam, "That brown powder, is that heroin?" Bearam replied, "No, it's bad." Ellwanger then asked, "Bad what?" Bearam replied, "Bad coke."

At trial, during direct examination, Ellwanger testified that he had asked Bearam whether he had been given his *Miranda* warnings, and that Bearam had replied, "I don't know." On cross-examination, Ellwanger testified that after questioning Bearam about the drugs, he asked one of the two agents near Bearam whether Bearam had been given his *Miranda* warnings, and

that the agent responded, "I don't know." Ellwanger replied, "Somebody should make sure he's Mirandized." Ellwanger stated that he questioned Bearam about the drugs solely "out of curiosity," since in his experience, "it was uncommon to have a substance like heroin mixed in with all this cocaine."

Immediately after obtaining the inculpatory statement from Bearam, Ellwanger told one of the two case agents about the statement. Only shortly before the trial did Ellwanger tell the prosecutor about the statement.

ATF Special Agent Thomas Shelton was one of the agents who executed the search warrant. He saw Bearam sitting in the kitchen near the closet from which the drugs were recovered. About 45 to 60 minutes after the search was completed, Shelton took part in a "brief, ten-minute interview" of Bearam in custody at an ATF field office. Also present were Thomas Kelly, the group supervisor, and Detective Chuck Harrison.

To Shelton's knowledge, Harrison had not been involved in the search. Before commencement of the interview, Kelly gave Bearam his *Miranda* warnings, and Bearam signed a *Miranda* waiver form. Bearam was not told that the statement he had previously made could not be used against him. During the interview, Bearam admitted that he dealt with drugs and that, the day before, he had received the bag of drugs recovered from the closet.

Shelton testified that it was only a month before trial that he learned of the inculpatory statement Bearam had made to Ellwanger. Shelton admitted that he spoke to Ellwanger throughout the day of the search, but stated that they only discussed the search, not any interviews of Bearam.

The District Court announced at the completion of Shelton's testimony that it would

suppress the unwarned statement Bearam made to Ellwanger, but not the statement he made to Shelton during the interview at the ATF office. The court found that the interviewing agents conducted their investigation in good faith, ruling that they did not deliberately utilize a "question-and-answer tactic" or any other tactic to avoid the requirements of *Miranda* or to "elicit any incriminating material." The court reasoned that the warnings provided to Bearam functioned effectively and "accomplish[ed] their objective."

Turning to the factors enumerated in the plurality's decision in *Missouri v. Seibert*, 542 U.S. 600, 604-11 (2004), the court noted that the factors supported its finding that *Miranda* warnings were effectively administered. Specifically, in concluding that the conduct in the present case did not amount to a question-and-answer tactic as described in *Seibert*, the court found, *inter alia*, that there was no interrogation by Ellwanger, there was no continuity of personnel, and the second statement was made at least an hour after the first.

## II.  *Sentencing*

A presentence report ("PSR") dated March 15, 2005 indicated that, pursuant to the U.S. Sentencing Guidelines, Bearam's offense level was 36, and that, taking into account Bearam's Criminal History Category I, the advisory range was 188 to 235 months imprisonment.

The drug quantity portion of this calculation was based on three crack sales by Bearam's co-defendant, Johnny Carter, and the drugs recovered from the closet in Sprinkles. However, although the Government's forensic chemist, Maureen Craig, testified at trial that 546.6 grams of cocaine base and 760.6 grams of powdered cocaine were recovered from the closet, the PSR stated that the respective amounts were 760.6 grams and 791.2 grams. The PSR further determined that a role adjustment was not warranted.

In a letter to the court dated May 9, 2005, the government raised objections to the PSR.

The government argued that, on the basis of Carter's testimony about Bearam's additional drug sales to Carter and about Bearam's sale of larger amounts of drugs to 10 other persons, the drug quantity should be increased, and that Bearam should receive a four-level role enhancement, resulting in a Guidelines level of 42 and an advisory Guidelines range of 360 months to life. Defense counsel objected to the government's letter, arguing that Carter was not credible and that the jury had not made determinations about Bearam's role or the drug quantity.

In an addendum to the PSR, dated May 11, the U.S. Probation Department agreed with the government's objections. In particular, the addendum recognized Bearam's status as the owner and manager of the establishment where the drugs were obtained, and that he was the drug supplier of at least 10 individual dealers.

The court, without making specific factual findings as to drug quantity or defendant's role in the crime, reached the same conclusion about the advisory Guidelines range as that advocated by the Government and the Probation Department. The court sentenced Bearam to the low end of the Guidelines range – 360 months – and then added, "I recognize that the guidelines are advisory instead of mandatory."

No mention was made by the court, the parties, or the Probation Department of 18 U.S.C. § 3553(a) or the factors enumerated therein apart from the Guidelines. The court did, however, twice note that the sentence of 360 months was "sufficient for the crime that was committed."

**DISCUSSION**

*I.* *Postwarning Confession*

On appeal, appellant argues that the District Court improperly admitted the postwarning confession into evidence because appellant did not knowingly and voluntarily waive his rights. *Miranda v. Arizona*, 384 U.S. 436 (1966).

The purpose of the *Miranda* warning is to ensure that the person in custody has sufficient knowledge of his or her constitutional rights relating to the interrogation and that any waiver of such rights is knowing, intelligent, and voluntary. *Id*. at 444-45; *Terry v. LeFevre*, 862 F.2d 409, 412 (2d Cir. 1988). We review a district court's determination regarding the constitutionality of a *Miranda* waiver *de novo* and a district court's underlying factual findings for clear error. *United States v. Spencer*, 995 F.2d 10, 11 (2d Cir. 1993) (per curiam).

The Supreme Court has twice addressed the admissibility of a confession obtained after a *Miranda* warning but preceded by the suspect's earlier, unwarned incriminating statements. *Oregon v. Elstad*, 470 U.S. 298 (1985); *Missouri v. Seibert*, 542 U.S. 600 (2004).

In *Elstad,* the Supreme Court addressed a set of facts substantially similar to those in the case at bar. In upholding the admission of a postwarning statement, the Court explained that a trial court must suppress a postwarning statement if the suspect demonstrates that his statement was involuntary despite the *Miranda* warning. *Elstad*, 470 U.S. at 318 (explaining that "the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements"). Thus, under *Elstad,* if the prewarning statement was voluntary, then the postwarning confession is admissible unless it was involuntarily made despite the *Miranda* warning. *See United States v. Wauneka*, 770 F.2d 1434, 1440 (9th Cir. 1985); *accord United States v. Stewart*, 388 F.3d 1079, 1090 (7th Cir. 2004).

Whereas in *Elstad*, the Court focused on the *voluntariness* of the confession, the plurality in *Seibert* shifted the focus to whether the *Miranda* warning was *effective*. In *Seibert*, a divided Court refused to allow the postwarning confession where a "two-step interrogation technique was used in a calculated way to undermine the *Miranda* warning." 542 U.S. at 622 (Kennedy, J.,

-8-

concurring in judgment). In that case, "[t]he unwarned interrogation was conducted in the station house, and the questioning was systematic, exhaustive, and managed with psychological skill." *Id.* at 616 (plurality opinion). The plurality laid out several factors to consider when deciding whether the warning was effective:

> the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first.

*Id*. at 615.

In his concurring opinion, Justice Kennedy laid out a different test for such cases:

> The admissibility of postwarning statements should continue to be governed by the principles of *Elstad* unless the deliberate two-step strategy was employed. If the deliberate two-step strategy has been used, postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made.

*Id*. at 622.

This Court has not yet spoken on the issue of how *Seibert* impacts the holding of *Elstad.* We note, however, that all of our sister circuits that have decided the issue have concluded that *Seibert*, rather than overruling *Elstad*, carved out an exception to *Elstad* for cases in which a deliberate, two-step strategy was used by law enforcement to obtain the postwarning confession. *See United States v. Kiam*, 432 F.3d 524, 532-33 (3d Cir. 2006) ("The District Court's analysis of the five *Seibert* factors was not faulty, but it was unnecessary, having found the initial failure to give *Miranda* warnings inadvertent. The District Court should have proceeded solely under *Elstad*."); *United States v. Courtney*, 463 F.3d 333, 338 (5th Cir. 2006) ("*Seibert* requires the suppression of a post-warning statement only where a deliberate two-step strategy is used and no curative measures are taken; where that strategy is not used, '[t]he admissibility of postwarning

statements [ ] continue[s] to be governed by the principles of *Elstad*.'") (quoting *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring)) (alterations in original); *United States v. Williams*, 435 F.3d 1148, 1157 (9th Cir. 2006) (stating that there is an "exception to *Elstad* carved out in *Seibert*"); *United States v. Street*, 472 F.3d 1298, 1312 (11th Cir. 2006) ("*Elstad* sets out the general rule that the existence of a pre-warning statement does not require suppression of a post-warning statement that was knowingly and voluntarily made . . . while *Seibert* sets out an exception for situations where police employ a deliberate 'question first' strategy.") (citation omitted); *United States v. Stewart*, 388 F.3d 1079, 1090 (7th Cir. 2004) ("Where the initial violation of *Miranda* was not part of a deliberate strategy to undermine the warnings, *Elstad* appears to have survived *Seibert*."); *United States v. Hernandez-Hernandez*, 384 F.3d 562, 566 (8th Cir. 2004) ("In its opinion, the [*Seibert*] Court distinguished its earlier decision in [*Elstad*,] which held a suspect who has answered inadvertently unwarned, uncoercive questions may validly waive his rights and provide an admissible statement after being warned.").

We now join our sister circuits in holding that *Seibert* lays out an exception to *Elstad* for cases in which a deliberate, two-step strategy was used by law enforcement to obtain the postwarning confession. We also find, in the present case, that such a strategy was not employed. Accordingly, the holding in *Elstad* applies.

The factual differences between the present case and *Seibert* demonstrate that a deliberate, two-step strategy was not employed here. First, whereas the officers in *Seibert* interrogated and obtained a full confession from the defendant before she was given her *Miranda* warnings, in the present case, Ellwanger asked Bearam only one question regarding the contents of one of the bags of narcotics, and Bearam responded only that it was "[b]ad coke." Because this was the only incriminating statement made by Bearam before he received the warnings, there was

-10-

almost no overlap between this statement and the full confession he gave after he received the warnings. This stands in stark contrast to the *Seibert* case, where the defendant gave a full confession before receiving the warning and then was essentially cross-examined about her confession into a tape recorder after having been given the warning. *Seibert*, 542 U.S. at 621 (Kennedy, J., concurring). Also, in the present case, the first remark was made to Ellwanger at Bearam's store, while the full confession was made to Agent Shelton at the ATF office over an hour later. In *Seibert*, both confessions occurred in the same place and to the same officer, with only a 20 minute break in between. *Seibert*, 542 U.S. at 605. Moreover, the District Court found that Ellwanger did not tell Shelton about Bearam's prewarning remark, and that finding was not clearly erroneous. Finally, whereas in *Seibert*, as stated above, the second round of interrogation was essentially a cross-examination using information gained during the first round of interrogation, in the present case, the postwarning questioning was not a continuation of the prewarning question. In fact, Shelton testified that he did not learn about the prior inculpatory statement until a month before trial. Accordingly, we find that *Elstad* applies here.

In holding that the postwarning statement was properly admitted into evidence, the Court in *Elstad* reasoned:

> Though belated, the reading of respondent's rights was undeniably complete. McAllister testified that he read the *Miranda* warnings aloud from a printed card and recorded Elstad's responses. There is no question that respondent knowingly and voluntarily waived his right to remain silent before he described his participation in the burglary. It is also beyond dispute that respondent's earlier remark was voluntary, within the meaning of the Fifth Amendment. Neither the environment nor the manner of either "interrogation" was coercive. The initial conversation took place at midday, in the living room area of respondent's own home, with his mother in the kitchen area, a few steps away. Although in retrospect the officers testified that respondent was then in custody, at the time he made his statement he had not been informed that he was under arrest. The arresting officers' testimony indicates that the brief stop in the living room before proceeding to the station house was not to interrogate the suspect but to notify his mother of the reason for his arrest.

470 U.S. at 314-15 (footnote omitted).

Similarly, in the present case, it is not disputed that, though belated, the reading of Bearam's *Miranda* rights was complete, and that Bearam waived those rights orally and in writing. Furthermore, Bearam's prewarning remark was voluntary, and the interrogation by Ellwanger was not coercive. Whereas the officer in *Elstad* effectively asked the defendant whether he was involved in a robbery, Ellwanger asked Bearam what a brown substance was. Ellwanger asserted at trial that the question was not to interrogate Bearam, but simply because he was "curious." Moreover, similar to the facts in *Elstad,* the prewarning questioning in the present case occurred in Bearam's store, while the postwarning questioning took place at an ATF office.

The Court in *Elstad* further stated:

> The fact that a suspect chooses to speak after being informed of his rights is, of course, highly probative. We find that the dictates of *Miranda* and the goals of the Fifth Amendment proscription against use of compelled testimony are fully satisfied in the circumstances of this case by barring use of the unwarned statement in the case in chief.

*Id.* at 318. In the present case, Bearam chose to speak after being informed of his rights, and the District Court excluded the prewarning statement from evidence.

Accordingly, the District Court's ruling must be affirmed.

**II.    *Sentencing***

Bearam also argues that the District Court (1) failed to make factual findings regarding the amount of narcotics involved in the conspiracy; (2) failed to make factual findings necessary to support the sentencing enhancement under U.S.S.G. § 3B1.1; and (3) failed to consider the sentencing factors enumerated in 18 U.S.C. § 3553(a).

Because objections to the sentence were not raised before the district court, we review for

"plain error." *See* Fed. R. Crim. P. 52(b). Under the plain error standard, there must be (1) error, (2) that is plain, and (3) that affects the defendant's substantial rights. *Johnson v. United States*, 520 U.S. 461, 466-67 (1997). If all three conditions are met, we may exercise our discretion to notice the error, provided that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*[2]

### A. Drug Quantity

Sentencing courts are required to "state in open court" their findings regarding the amount of narcotics involved in a drug conspiracy. 18 U.S.C. § 3553(c) (court shall state the reasons for its imposition of a particular sentence); *see also United States v. Maturo*, 982 F.2d 57, 62 (2d Cir. 1992) (remanding case for additional sentencing proceedings where district court failed to make "specific affirmative factual findings" regarding the amount of narcotics involved), *cert. denied*, 508 U.S. 980 (1993); *United States v. Thorn*, 446 F.3d 378, 394 (2d Cir. 2006) ("We stress the importance of the District Court's obligation under 18 U.S.C. § 3553(c) to explain the reasons supporting the sentence imposed which, among other things, aids this Court's review.").

In the present case, the District Court failed to make factual findings at the sentencing hearing regarding the amount of narcotics involved, stating only that "Johnny Carter testified that he saw many people, at least ten people buy drugs from this defendant. As I say, the credibility of Mr. Carter was resolved by the jury when they came back with a guilty verdict for this

---

[2] Moreover, we have written that "noticing unobjected[-]to errors that occur at trial precipitates an entire new trial that could have been avoided by a timely objection, whereas correcting a sentencing error results in, at most, only a remand for resentencing . . . permit[ting] us to relax the otherwise rigorous standards of plain error review to correct sentencing errors." *United States v. Sofsky*, 287 F.3d 122, 125 (2d Cir. 2002) (internal citations omitted).

defendant." However, the jury was not called upon to determine the precise amount of narcotics involved, nor does a guilty verdict necessarily indicate that the jury found this particular witness to be credible on the specific point of drug quantity. Moreover, even if the District Court relied on the factual findings in the PSR to support the sentence, the reliance amounted to error, as even the government concedes that "the PSR inaccurately reflected certain of the drug amounts seized from Sprinkles." Accordingly, the case must be remanded for resentencing so that the District Court can make the required findings as to drug quantity.

**B.      Section 3B1.1(a) Role Enhancement**

Section 3B1.1(a) of the Sentencing Guidelines sets forth enhanced penalties for defendants who act as organizers or leaders of group criminal activity. A four-level enhancement is applicable "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a).

"In enhancing a defendant's sentence based on his role in the offense, a district court must make specific factual findings as to that role." *United States v. Stevens*, 985 F.2d 1175, 1184 (2d Cir. 1993) (citing *United States v. Lanese*, 890 F.2d 1284, 1294 (2d Cir. 1989)). Although this requirement of making specific factual findings "may interfere with the smooth operation of the sentencing hearing," we require specific factual findings to permit meaningful appellate review. *Id*. (internal quotation marks omitted).

In *United States v. Huerta*, we remanded for resentencing after the district court declined to apply the § 3B1.1(a) enhancement. Illustrating the level of detail we require in the findings related to a § 3B1.1(a) issue, we explained as follows:

> Our review of the District Court's decision to deny the role enhancement is further complicated by the fact that the court's factual findings – particularly as to contested issues – were limited. The District Court indicated in the judgment that it had

-14-

"adopt[ed] the factual findings and guideline application in the presentence report except . . . as set forth on the record on 7/15/03." Unfortunately, the record is not entirely clear about the court's ultimate determination as to, *inter alia:* (i) whether Huerta had knowledge of the fraudulent scheme when he hired various of his co-conspirators; (ii) whether Huerta knew all of the other participants and the extent of his direct involvement with them; (iii) whether Huerta arranged for Miranda to be paid in a manner that would conceal her involvement; and (iv) the extent of Huerta's knowledge of what specifically was transpiring in Florida at the trailer parks where Miranda collected the blood samples. The District Court also neglected to find other facts that would have further informed the role-enhancement inquiry. For example, there is no evidence of how much Huerta actually profited from the fraud relative to his co-conspirators. In addition, one of the government's more serious allegations against Huerta – that he intervened to prevent one of his employees who was not a participant in the scheme from investigating allegations that Liberty was submitting false claims – was not contained in the PSR, not adopted by the District Court at the hearing, and not conceded by Huerta.

371 F.3d 88, 92-93 (2d Cir. 2004) (per curiam).

Application note 4 to § 3B1.1 of the Sentencing Guidelines provides a list of "[f]actors the court should consider" in evaluating a defendant's role in the offense, including:

the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n.4 (2004). These factors may be useful "[i]n distinguishing a leadership and organizational role from one of mere management or supervision." *Id*.

In the present case, the District Court failed to make any such findings, let alone with the level of specificity we required in *Huerta*, stating only, "[t]he third thing and the thing that I wrestled with was the defendant's role in the offense. 3B1.1(a) states that if a defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, then he can be liable. I think that this covers this defendant. And because he is an organizer, he is not eligible for the safety valve provision." Under *Huerta* and the Sentencing

Guidelines application notes, this statement is far too general to support a role enhancement.

Even if a district court does not make the required factual findings at the sentencing hearing, a district court satisfies its obligation to make the requisite specific factual findings when it explicitly adopts the factual findings set forth in the presentence report. *United States v. Eyman*, 313 F.3d 741, 745 (2d Cir. 2002) (per curiam), *cert. denied*, 538 U.S. 1021 (2003); *United States v. Zichettello*, 208 F.3d 72, 107 (2d Cir. 2000), *cert. denied,* 531 U.S. 1143 (2001).

Here, however, the District Court did not explicitly adopt the findings in open court. Rather, the District Court provided that it was "adopt[ing] the presentence report and guideline applications without change" in a "Statement of Reasons" which was attached to the final judgment and marked "Not for Public Disclosure."

Even if a district court explicitly adopts the PSR, we still must consider whether the trial court has satisfied its obligations under 18 U.S.C. § 3553(c) to "state in open court the reasons for its imposition of the particular sentence."

> Congress had goals in mind when it enacted § 3553(c), including: (1) to inform the defendant of the reasons for his sentence, (2) to permit meaningful appellate review, (3) to enable the public to learn why defendant received a particular sentence, and (4) to guide probation officers and prison officials in developing a program to meet defendant's needs. *See* S.Rep. No. 98-225, at 79-80 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3262-63; *United States v. Carey,* 895 F.2d 318, 325 (7th Cir. 1990). We are concerned that these goals may not be fully met when the fact-finding to support a sentence enhancement is set out only in the written judgment.

*United States v. Molina*, 356 F.3d 269, 277 (2d Cir. 2004). Here, not only was the trial court's adoption of the PSR set out only in a written judgment, that document was not available to the public.

While we have found that failure to satisfy the open court requirements of § 3553(c) constitutes error, we also have found that the error does not constitute "plain error" if the district

court relies on the findings in the PSR, and the factual findings in the PSR are adequate to support the sentence. *Molina*, 356 F.3d at 277-78; *see also United States v. Gore*, 298 F.3d 322, 325 (5th Cir. 2002); *United States v. Evans*, 272 F.3d 1069, 1089 (8th Cir. 2001), *cert. denied*, 535 U.S. 1029 (2002). In *Molina*, we held that because the findings of the PSR adopted by the district court were "adequate," defendant had failed to show that the district court's error affected a substantial right. We accordingly found that the error did not constitute plain error. Here however, the factual findings in the PSR are *not* adequate to support the sentence imposed. The addendum to the PSR, like the District Court, simply made reference to Carter's testimony that Bearam supplied drugs to at least 10 dealers. This brief statement does not demonstrate consideration of the various factors laid out in *Huerta* or application note 4 to § 3B1.1 to support an enhancement under § 3B1.1(a). Accordingly, the District Court's reliance on the inadequate findings of the PSR, without more, constituted plain error.

Our decision in *United States v. Lewis*, 424 F.3d 239 (2d Cir. 2005), lends support to this conclusion. In finding plain error in *Lewis*, we distinguished the case from *Molina* as follows:

> In *Molina*, to be sure, we determined that although the district court erred in failing to comply with § 3553(c)'s requirement that it state in open court its reasons for imposing a particular sentence, the "plain error" standard was not met because the district court adopted the findings of the defendant's Pre-Sentence Report in its written judgment and, in addition, facts elicited at the sentencing hearing supported the court's enhancement of the defendant's sentence. *See Molina*, 356 F.3d at 276-78. In this case, by contrast, there is an insufficient basis for Lewis or for us to determine why the district court did what it did. We therefore conclude that the absence of a statement of reasons affected Lewis's substantial rights.

*Lewis*, 424 F.3d at 247 n.5. Here, the District Court's statements at the hearing, coupled with the findings in the PSR, provide an insufficient basis for Bearam or this Court "to determine why the district court did what it did." *Id.* Accordingly, as in *Lewis*, the District Court's error constitutes plain error, and the case must be remanded for resentencing.

## C.    Section 3553(a) Factors

Defendant next argues that the District Court did not adequately consider the § 3553(a) factors in imposing its sentence.

We "presume, in the absence of record evidence suggesting otherwise, that a sentencing judge has faithfully discharged [his] duty to consider the statutory factors" enumerated in § 3553(a). *United States v. Fernandez*, 443 F.3d 19, 30 (2d Cir. 2006); s*ee also United States v. Pereira*, 465 F.3d 515, 523 (2d Cir. 2006) (stating that while "a district court must 'consider' the factors listed in § 3553(a) . . . [w]e have . . . steadfastly refused to require judges to explain or enumerate how such consideration was conducted"). "[W]e will not conclude that a district judge shirked [his] obligation to consider the § 3553(a) factors simply because [he] did not discuss each one individually or did not expressly parse or address every argument relating to those factors that the defendant advanced." *Fernandez*, 443 F.3d at 30. "[T]here is no requirement that the court mention the required [§ 3553(a)] factors, much less explain how each factor affected the court's decision. In the absence of contrary indications, courts are generally presumed to know the laws that govern their decisions and to have followed them." *United States v. Banks*, 464 F.3d 184, 190 (2d Cir. 2006).

Defendant argues that the District Court failed to adequately consider his age and the disparity between crack and powder cocaine Guidelines sentences. This argument is without merit as a district court is not required to "*precisely identify* either the factors set forth in § 3553(a) or specific arguments bearing on the implementation of those factors in order to comply with [its] duty to consider all the § 3553(a) factors along with the Guidelines applicable range." *Fernandez*, 443 F.3d at 29. The record is devoid of evidence that the District Court misunderstood the relevant statutory requirement or the Guidelines range; thus this Court must

presume that the court "faithfully discharged [its] duty to consider the statutory factors." *Id.* at 30. Further, we have expressly rejected the notion that a District Court may consider a general disagreement with the Guidelines' treatment of crack and powder cocaine sentences. *See United States v. Castillo*, 460 F.3d 337, 361 (2d Cir. 2006).

We note that a sentence may be unreasonable when unjustified reliance is placed on one section 3553(a) factor, *United States v. Rattoballi*, 452 F.3d 127, 137 (2d Cir. 2006), when a sentence reflects general policy disagreement with the Guidelines, *see Castillo*, 460 F.3d at 355-58, or when a sentence is based on a consideration not included in section 3553(a), *United States v. Godding,* 405 F.3d 125, 126-27 (2d Cir. 2005) (per curiam). However, the District Court in the present case committed none of those errors.

Finally, defendant argues that the District Court erred in its treatment of § 3553's parsimony clause. Section 3553(a) calls on district courts to "impose a sentence sufficient, but not greater than necessary, to comply with" the statutory purposes of sentencing. 18 U.S.C. § 3553(a). In fashioning defendant's sentence, the district judge stated only that he viewed the sentence as "sufficient for the crime that was committed." He did not mention the "not greater than necessary" portion of the clause. However, "where, as in this case, the defendant never argued the parsimony clause in the district court, we do not assume from the court's failure specifically to reference that clause that the court has ignored its mandate." *United States v. Ministro-Tapia*, 470 F.3d 137, 141 (2d Cir. 2006). Accordingly, defendant's argument fails.

**CONCLUSION**

In light of our determination that the court erred in failing to state its specific findings regarding the amount of narcotics for which defendant is responsible and defendant's role in the offense, as well as the possibility that a statement of reasons would provide defendant with a

platform upon which to build an argument that his sentence is unreasonable, we remand the case to the District Court for resentencing. The District Court should resentence defendant stating its reasons in open court and in the written judgment in compliance with 18 U.S.C. § 3553(c).

We have carefully considered all of Bearam's remaining arguments and find them to be without merit. Accordingly, the amended judgment of the District Court is AFFIRMED and the case is REMANDED for resentencing.

WALLACE, Circuit Judge, concurring in the judgment,

I concur in the judgment. I agree that *Missouri v. Seibert*, 542 U.S. 600 (2004), states an exception to *Oregon v. Elstad*, 470 U.S. 298 (1985). However, the question then becomes whether the district court clearly erred by finding that the Bureau of Alcohol, Tobacco and Firearms agents did not employ the deliberate, two-step strategy outlawed in *Seibert*. I do not have a "definite and firm conviction" that the district court's finding on this issue is mistaken. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (citation and quotations omitted). Bearam fails to demonstrate clear error, and *Elstad* applies. Bearam does not contend that his second confession was either un-warned or involuntary. The second confession was therefore admissible. I would go no further to affirm.