10-0495-cr
United States v. Courtney George Miller

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 24th day of October, two thousand eleven.

PRESENT:

>        DEBRA ANN LIVINGSTON,
>        RAYMOND J. LOHIER, JR.,
>        SUSAN L. CARNEY
>                 *Circuit Judges*.

---

UNITED STATES OF AMERICA,
        *Appellee*,

   -v.-                                                    No. 10-0495-cr

COURTNEY GEORGE MILLER, aka RALPH
NATHAN STOKES, aka MARTIN DAVID MORRIS,
        *Defendant-Appellant*.

---

RANDALL D. UNGER, Bayside, New York, for *Defendant-Appellant*.


AMIR H. TOOSSI (Peter A. Norling *on the brief*) *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, New York, for *Appellee*.

Appeal from the United States District Court for the Eastern District of New York (Dora L. Irizarry, *Judge*.)

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED that the judgment of conviction entered on February 3, 2010 is AFFIRMED.

Defendant Courtney George Miller appeals from a judgment of conviction entered on February 3, 2010 following a jury trial in the Eastern District of New York convicting him of one count of use and attempted use of a passport secured by false documents in violation of 18 U.S.C. § 1542, and one count of aggravated identity theft in violation of 18 U.S.C. §§ 1028A(a)(1), 1028A(b), and 1028A(c)(7). On appeal, Miller contends the district court erred in refusing to suppress statements made by Miller to Officer Frank Umowski of Customs and Border Protection (CBP) and to Special Agent Eric Donelan of the Department of State. We presume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal and revisit those issues only as necessary to facilitate this discussion.

Miller argues that the district court erred as a matter of law in refusing to suppress his statements because he made those statements while under custodial interrogation without having received the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966). We review the district court's legal conclusions *de novo*. *United States v. Rosa*, 626 F.3d 56, 61 (2d Cir. 2010).

Determining whether Miller was in custody when he was questioned by Officer Umowski involves an objective inquiry into the totality of the circumstances that considers "how a *reasonable person* in the suspect's position would view the situation." *United States v. FNU LNU*, --- F.3d ---, 2011 WL 3447494, at \*5 (2d Cir. Aug. 9, 2011) (citing *Stansbury v. California*, 511 U.S. 318, 323 (1994)). "The overarching custody question is whether" such a "reasonable [person] . . . would have understood herself to be subjected to restraints comparable to those associated with a formal arrest." *Id.* at \*7 (internal quotation marks omitted).

Answering this question "necessarily involves considering the circumstances surrounding the encounter with authorities." *Id.* at *7. Here, reasonable expectations about "how the questioning is likely to unfold are also relevant": a reasonable traveler going through customs at an American airport "will expect some constraints as well as questions and follow-up about his or her citizenship, authorization to enter the country, destination, baggage, and so on. That one expects both constraints and questions . . . reduces the likelihood that reasonable persons in that situation would consider themselves to be under arrest." *Id.* at *8. And in many, though not all, cases, "that the questions asked fall within the range of inquiries one expects will, by itself, be enough to assure a reasonable person that he or she is not under arrest." *Id.* In particular, that "a reasonable person would recognize all . . . questions as relevant to her admissibility to the United States" militates strongly against a finding of custody: "[s]uch a person would consider them par for the course of entering the country from abroad." *Id.* at 9.

Here, as in *FNU LNU*, 2011 WL 3447494 at *1, many of Officer Umowski's questions to Miller went only to admissibility–specifically, whether Miller could demonstrate to Umowski's satisfaction that Miller was the true bearer of the identity of Martin David Morris claimed on the passport he presented. Umowski's remarks after he became confident that Miller "was not the rightful owner of [the] identity [of] Martin David Morris," present a much closer question. We need not decide this question, however, because even if we assume, without deciding, that the district court erred in admitting the statements made by Miller after Umowski had concluded that Miller was not Morris, any such error was harmless in light of Miller's Mirandized admissions to Agent Donelan.

Voluntary answers to Mirandized questions are admissible despite a prior, un-Mirandized custodial interrogation if law enforcement officials did not use "a 'deliberate two-step strategy' in a 'calculated way to undermine the *Miranda* warning.'" *United States v. Capers*, 627 F.3d 470, 476

(2d Cir. 2010) (quoting *Missouri v. Seibert*, 542 U.S. 600, 622 (2004) (Kennedy, *J.*, concurring)). To determine whether such a strategy was deliberately used, we review (1) the overlap between the first and second interrogations, (2) the involvement of the same officers in both interrogations, (3) whether both interrogations occurred in the same place, (4) whether the officer conducting the second interrogation knew of inculpatory answers provided in the first, and (5) whether the Mirandized interrogation was merely a continuation of the first. *Id.* at 478 (citing *United States v. Carter*, 489 F.3d 528, 536 (2d Cir. 2007)). Other factors include the timing and "completeness" of the pre-warning interrogation. *See id.* (citing *United States v. Street*, 472 F.3d 1298, 1314 (11th Cir. 2006)).

Here, it is true that Donelan already knew some of Miller's answers to Umowski's questions and believed that Miller had "confessed." The two interrogations, which both occurred within JFK Airport, were separated at most by two and a half hours, and the "inquisitorial environment of the questioning," *Capers*, 627 F.3d at 483, was consistent. Umowski was also present during Donelan's interrogation of Miller.

Nonetheless, the overall record fails to establish that the two-step interrogation in this case was deliberate. First, Umowski and Donelan worked for different agencies, and there is no record evidence that they discussed or otherwise strategized about the questions either would pose during their interviews of Miller. Indeed, Donelan knew nothing about Umowski's initial interview until he received a call regarding Miller's case while in bed at home, little more than an hour before conducting the second interrogation. Second, the part of Umowski's interview that we assume to have constituted an un-Mirandized custodial interrogation was incomplete and elicited only Miller's social security number and name. Third, Umowski testified that he had never previously given *Miranda* warnings and could not charge criminal suspects. Lastly, Umowski said nothing during the second interview, and Donelan did not refer to the first interview.

Donelan elicited from Miller the same information that Miller had given Umowski without employing a deliberate two-step interrogation calculated to undermine *Miranda* warnings. Separate and apart from Umowski's testimony, Donelan's testimony about Miller's admissions, properly admitted at trial, proved highly effective in making the government's case. Because introducing the challenged statements by Miller to Umowski did not ultimately make a difference with respect to the verdict, any error in admitting those statements was harmless.

To the extent Miller raises other arguments with respect to the judgment below, we have considered them and reject them as meritless.

Accordingly, and for the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk